UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JANE DOE and JOHN DOE Sr., individually and as parents and natural guardians of John Doe, an infant,

Plaintiffs,

- against -

1:22-cv-00700-DNH-ML

BOARD OF EDUCATION OF NORTH COLONIE CENTRAL SCHOOL DISTRICT, NORTH COLONIE CENTRAL SCHOOL DISTRICT, SHAKER CAPITALS LACROSSE CLUB, INC., SUPERINTENDENT D. JOSEPH CORR, in his individual and official capacity, GARRETT COUTURE, in his individual and official capacity, SHAWN HENNESSEY , in his individual and official capacity, JOSEPH POLLICINO, in his individual and official capacity, CLAYTON HOWELL, in his individual capacity, ABBEY NORTH, in her individual and official capacity, THOMAS JOHN KARL, in his individual capacity,

Defendants.

---

==================================================================

**PLAINTIFFS OPPOSITION TO MOTIONS TO DISMISS**

==================================================================

## PRELIMINARY STATEMENT

This Memorandum of Law sets forth the factual and legal arguments in opposition to the various Motions to Dismiss submitted by the defendants in this case.

This case seeks to redress the damage caused by defendants to the infant plaintiff and his parents related to constitutional violations and tortious conduct engaged in by defendants.
In moving to dismiss plaintiffs' claims, defendants have misinterpreted and mischaracterized the claims asserted by plaintiffs. For example, counsel for the School District and the Shaker Capitals claim that defendants Couture, Hennessey and Pollicino are sued in their official capacities as employees/agents of defendant Shaker Capitals only. This however is not accurate. Rather, as set forth repeatedly throughout the Complaint, it is alleged that these defendants acted in a "dual" role as a joint employee of both the School District as well as the Shaker Capitals. As clearly set forth in the Complaint:

> defendants Hennessey and Couture are School officials and use their positions both at the School and with the Capitals to harass, mistreat, abuse and retaliate against the plaintiffs.

*See* Complaint, ¶ 19.

With regard to the individual defendants Corr and Abbey North, counsel for the School District takes a limited view of the claims against them, mostly ignoring the numerous facts that show these defendants failed to take prompt remedial action once they became aware of the harassment and civil rights abuses, thereby making them individually liable for the acts of others because they failed to take action to prevent a recurrence of the abuses, and/or were grossly negligent or deliberately indifferent to the civil rights abuses. Once again, defendant has not shifted any burden to plaintiffs on these claims because they failed to address the issues in their motion to dismiss.

The School District argues that defendants Corr and North should be dismissed from the lawsuit because their names are referenced less often than defendants Hennessey and Couture. First, as set forth above, defendants Hennessey and Couture are also sued in their capacity as School District employees, so this argument does nothing to limit the liability of the School District. Second, the "number of times" argument is flawed because (a) culpability is based upon a totality of circumstances and there is no threshold "number of times" a defendant has to violate plaintiff's rights in order to make out a claim, (b) even if it were relevant, the School District miscounted the number of actual references. For clarity, the true and accurate "number of times" each individual is specifically named is: Hennessey: 86; Couture: 55; Abbey North: 41; Corr: 30; Howell 24; and Karl 3.

A more comprehensive Factual Statement is contained in the accompanying Declaration of Ryan M. Finn, with Exhibits. This brief will rely upon facts only as necessary to make legal arguments and plaintiffs respectfully refer the Court to the Complaint, together with Exhibit A to the Complaint, for a full recitation of the relevant facts.

**MOTION TO DISMISS STANDARD**

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pursuant to this liberal pleading rule, a complaint is intended to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility does not impose a probability

requirement, and does not require the plaintiff to put all of its evidence in the initial pleading, it requires only that the plaintiff's allegations "raise a reasonable expectation that discovery will reveal evidence" in support of the plaintiff's claim. Twombly, 550 U.S. at 556. Moreover, a plaintiff is required only to plead factual content that would allow the "court to draw the reasonable inference that defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In considering a motion to dismiss, the court is required to "accept all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Lundy v. Catholic Health System of Long Island, Inc., 711 F.3d 106 (2d Cir. 2013).

At the motion to dismiss stage this Court is concerned with the sufficiency of plaintiff's factual allegations and whether such allegations could make out a prima facie case—the standard at this point is not whether plaintiff has proven a prima facie case nor is plaintiff required to submit evidence in order to plead its case. Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510 (2002)(noting that the familiar McDonnell Douglas standard applicable to employment discrimination and retaliation claims "is an evidentiary standard, not a pleading requirement."); Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir. 2006). As the Court held in Swierkiewicz, plaintiff's allegation "that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA" gave the employer "fair notice of what [the plaintiff's] claims are and the grounds upon which they rest." Id. at 514.

## Point I

## ALL DEFENDANTS ARE SUBJECT TO SECTION 1983 AS STATE ACTORS

For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ('the compulsion test'); (2) when the state provides "significant

encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test'). Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (*quoting* Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296 (2001)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012) (*quoting* Rendell Baker v. Kohn, 457 U.S. 830, 838 (1982)).

As set forth, above, counsel for the Shaker Capitals incorrectly asserts that individual defendant Couture, Pollicino, and Hennessey are sued in their official capacities as employees of the Shaker Capitals, but not as employees for the School District. This is false. In fact, each defendant is also sued in his capacity as an employee of the School District, and, as alleged throughout the Complaint and Exhibit A, it is alleged that these School District employees controlled and jointly acted with the other Shaker Capitals Board members to deprive plaintiffs of their constitutional rights.

One of the many examples showing the overlapping nature of the defendants' behavior is shown in Exhibit A, to the Complaint, at page 10:

> **5/2/2021**: DAD and MOM attended SON's lacrosse game at Columbia High School (North Colonie owned and operated field). DAD warmed SON up prior to the game and then sat with the other parents. This is customary for parents to do so with their kids before a game. DAD and other parents were asked by Coach Kirk Endres to assist with the bench and help substituting kids in and out of the game. DAD thought it was best to not do so and declined. A few other parents assisted. DAD and MOM interacted with several parents and enjoying the game. MOM noticed that Shawn Hennessey was talking with Clay Howell and that they would both turn and look over at her and DAD and then SON, which struck her as odd. MOM alerted DAD and he witnessed this odd behavior as well. Shawn and Clay continued this behavior for over 10 minutes or so. DAD and MOM then witnessed Clay Howell walk behind the end line of the game where SON was playing and filming SON directly behind the goal that he was in. They also heard Clay

> taunting SON and could see SON becoming nervous and agitated. SON is extremely fearful of this man, and this has been an ongoing occurrence on Clay's part. Clay's child is not on SON's team and was not playing on the same field and therefore, Clay had no apparent reason to be near SON's field and near him. Clay is a NYS trooper and has a history of bullying and taunting SON, and this matter was and is currently being addressed with the NYS Police. MOM was able to capture a picture of Clay doing this behind SON's goal. Upon information and belief Shawn Hennessey encouraged, condoned and requested that Clay Howell bully and intimidate the plaintiffs herein.

MOM was very concerned about the bullying of her child by a New York State Trooper and accordingly she complained to defendant Abbey North, pleading with her to intervene and stop the abuse:

> **<u>05/12/2021</u>**: MOM reached out to Abbey North, SON's principal, and requested to address the concerns of SON being bullied and harassed with Sara Conway, Loudonville Elementary school counselor. MOM explained that SON was dealing with the bullying and harassment in his neighborhood along with at Blue Creek School, North Colonie Central School District property, while at practice, which was normally a place he could feel safe and have fun. MOM explained that SON was terrified of Clay and now that this was happening on school property, it was a major concern for SON. Sara Conway reached out to MOM, via email, and they discussed arrangements for Sara and SON to meet and discuss these issues at school.

Although defendant Howell is not a School District employee, he nonetheless was bullying SON, on School grounds, and, as a Principal of the School, defendant Abbey North had an obligation to act. She did nothing, providing for supervisory liability and liability for the School District.

Further, the very next day, defendant Couture, acting in his dual role as School District Employee and Shaker Capitals representative, further retaliates against plaintiffs. *See* <u>Complaint Exhibit A</u>, p. 11, which sets forth an interaction that occurred on 05/14/2021:

> MOM texted Garrett Couture a picture of SON at 8:50 AM. Other kids' pictures were being posted and SON's picture had still not been posted. DAD then sent SON's picture at 9:42 AM, the picture still did not get posted. DAD resent at 1:46 PM and MOM at 2:01 PM and the picture never got posted. Garrett is the Dean of Students at Shaker High School and was working that day at Shaker. Garrett was posting pictures all day while working at the School District. SON was looking forward to seeing his photo and would

> be home soon to ask about the picture, and no action was taken by Garrett. SON came home and was very upset to see all of his friends' pictures had been posted and not his. This made SON very upset and sad. MOM emailed SON's school principal, Abbey North, along with Joseph Corr, North Colonie Superintendent and informed them of the social media situation and that SON was heartbroken that he was not included. The Shaker Capitals social media pages are run by Garrett Couture. We received no response from Joseph Corr or the School District.

This example shows defendant Couture, working at the School District, during school hours, using school district computers, to harass plaintiffs by posting photos of every other Shaker Capitals player, but not SON. The proximity to the timing of the complaint made to defendant Abbey North (two days prior) shows that the retaliation was close in time to the protected complaint. This activity by Couture is the responsibility of both the School District and the Shaker Capitals. With regard to defendants Corr and North, this is a specific example of them being told about a School District employee (Couture) bullying the infant plaintiff, and neither defendant (both in supervisory rolls) did anything about it.

On May 20, 2021, defendant Couture responded to a Complaint made by MOM regarding bullying of SON at Shaker Capitals games. The very next day defendant Couture stated that he no longer wished to be contacted by plaintiffs. On May 22, 2021, DAD is told that he is no longer allowed to go to Shaker Capitals games (retaliation) even if they are not on School District grounds or property. Once again the close proximity between complaints made followed by punitive action taken by defendants, proves a circumstantial case of retaliation. *See* Complaint Exhibit A, p.12. Similar issues with defendant Couture isolating and harassing SON can be found on Complaint Exhibit A, p. 13, at entries listed "06/16/2021", "08/13/2021"

On June 9, 2021 DAD wrote a letter to the School Board seeking limited permission to be on School grounds so he could watch his sons games. This written request followed several prior verbal requests, all of which were denied. That same day MOM once again complained to

defendant Abbey North regarding the continuous harassment and bullying by defendants Couture and Hennessey, both on and off School grounds. Defendant Abbey North forwarded the complaints to defendant Corr. *See* Complaint Exhibit A, p. 13.

An additional complaint was made to defendant Abbey North on June 13, 2021. In response, on June 16, 2021, defendant Couture, while working at the School District, in his capacity as School District employee and in his dual role as Executive Board member of the Shaker Capitals, once again harasses SON. *See* Complaint Exhibit A, p. 13, entry for "06/16/2021".

On August 14, 2021 DAD receives a certified letter form the Executive Board of the Shaker Capitals (defendants Couture, Hennessey and Pollicino, all employees of the School District), in which they ban SON from the league and prevent SON from playing lacrosse for the Shaker Capitals or participating in any events. *See* Complaint Exhibit A, p. 13-14

On August 24, 2021, after numerous requests to reconsider, defendant Corr "allows" DAD to "come on school district property for the sole purpose of dropping off or picking up your child" or in emergencies. *See* Complaint Exhibit A, p. 13. DAD was still not granted a hearing and the ban remains in place since October 2020 without any hearing offered by the School District.

In early September 2021 DAD was contacted by a coach in Guilderland, and, DAD was attempting to get his son on another team. *See* Complaint Exhibit A, p 14. His Coach and other members of the community were falsely told that plaintiffs pulled their SON from the league after DAD was banned. SON is repeatedly called a liar. *See* Complaint Exhibit A, p. 15. After several additional harassing and defamatory incidents involving defendant Couture and Hennessey, MOM once again complains to defendant Abbey North on December 22, 2021,

identifying a specific instance of when her SON was targeted in retaliation for their continued reports of harassment and abuse. There is no response from defendant Abbey North. Complaint Exhibit A, p. 17.

Meanwhile, by the end of December 2021, bullying and harassment on social media aimed at plaintiffs become unbearable: DAD is repeatedly called a liar, a narcissist, has his criminal arrest routinely publicized and SON is also harassed and bullied through the Twitter page.

After numerous complaints to the School District, to the Shaker Capitals, and to individual defendant Corr and Abbey North, and Defendant Couture, it was brought to plaintiffs' attention that their family logo was cut off the wall at the "Founding Families" section of the Shaker Capitals Box Wall, located on the campus and public land owned and operated by the School District. Complaints were made about this incident to the Shaker Capitals and the School District but no one took any action. Complaint Exhibit A, p. 18. On January 14, 2022, defendant Howell was observed bullying and harassing SON, again; and again this behavior was reported to defendant Abbey North, who took absolutely no action. Complaint Exhibit A, p. 19. On February 11, 2022, SON got off the school bus and immediately thereafter defendant Howell drove down the road in his State Trooper vehicle at a high rate of speed and began swerving toward SON in an intimidating and threatening manner. Once again, this behavior was reported to defendant Abbey North, who did nothing. Complaint Exhibit A, p 19.

Under the "joint action" doctrine, a private actor can be found "to act `under color of state law for § 1983 purposes . . . [if the private party] is a willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27 (1980). "The touchstone of joint action is often a `plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the

police." Forbes v. City of New York, No. 05-CV-7331 (NRB), 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (*citing* Ginsberg v. Healey Car Truck Leasing, Inc., 189 F.3d 268, 272 (2d Cir. 1999)). "To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." Bang v. Utopia Restaurant, 923 F. Supp. 46, 49 (S.D.N.Y. 1996); *see also* Burrell v. City of Mattoon, 378 F.3d 642, 650 (7th Cir. 2004) (under joint action requirement, plaintiff must show that "both public and private actors share a common, unconstitutional goal" (internal quotation marks omitted)).

In addition, liability under § 1983 may also apply to a private party who "conspires with a state official to violate the plaintiff's constitutional rights. . . ." Fisk v. Letterman, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005) (report and recommendation), *adopted in relevant part by* Fisk v. Letterman, 401 F. Supp. 2d 362 (S.D.N.Y. 2005) When the private actor takes a more active role, however, and jointly engages in action with state actors, he will be found to be a state actor. See, e.g., Lugar, 457 U.S. at 942 (finding that, when a supplier sought prejudgment attachment of a debtor's property, supplier was a state actor because it "invok[ed] the aid of state officials to take advantage of state-created attachment procedures"); Dennis, 449 U.S. at 27-28 (holding that defendants who conspired with and participated in bribery with federal judge acted under color of state law); Berger v. Hanlon, 129 F.3d 505, 515 (9th Cir. 1997), vacated on other grounds by 526 U.S. 808 (members of the media who accompanied police on a search were state actors because the government and media agreed "to engage jointly in an enterprise that only the government could lawfully institute – the execution of a search warrant – for the mutual benefit of both the private interests of the media and the government officials' interest in

publicity"); DeMeo v. Kean, 754 F. Supp. 2d 435, 442 (N.D.N.Y. 2010) (a bouncer who helped a police officer drag a patron out of a bar was a state actor).

Thus, when the relevant actors are private individuals or associations, the Court must still assess whether their actions were nevertheless "under color of state law," which is a fact-specific inquiry. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). As set forth, above, there are numerous factual allegations that support joint action and/or control over the Shaker Capitals by School District employees using School District time, resources and efforts to deprive plaintiffs of their constitutional rights.

With regard to the individual defendants, liability will ultimately turn on whether the individual was "personally involved in the alleged deprivation." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004). Personal involvement can be established by showing that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring. Littlejohn v. City of N.Y., 795 F.3d 297, 314 (2d Cir. 2015).

Each of the named defendants engaged in intentional conduct that contributed to the infliction of emotional distress and constitutional deprivations. For example, defendant Howell claims that paragraph 48 is the only time he is referenced in the Complaint. First, this is inaccurate as defendant Howell is repeatedly referenced throughout Exhibit A to the Complaint.

However, even if the Exhibit was not considered, Paragraph 48 certainly alleges "personal involvement." Paragraph 48 of the Complaint states:

> In furtherance of the conspiracy to harass, defame, mistreat and abuse the plaintiffs, defendants have used a New York State Trooper (and neighbor of the plaintiffs) in an effort to continue the harassment and intimidation of plaintiffs. Plaintiffs have previously filed a complaint with the New York State Police regarding the actions of State Police Officer Clay Howell. Mr. Howell has repeatedly intimidated, harassed, abused, and bullied SON, causing his parents to make several complaints to the School as well as the New York State Police. SON and his parents have made complaints that Trooper Howell has repeatedly made threatening faces, gestures, and motion toward him including, on several occasions, where Trooper Howell "mimicked" an individual getting his throat cut, and, on another occasion where Trooper Howell violently swerved toward SON with his police vehicle.

Assuming these facts are true, the threatening and harassing behavior of defendant Howell, in furtherance of a conspiracy to punish and deprive plaintiffs of their civil rights, shows personal involvement. Similarly, the Complaint with Exhibit is replete with personal involvement for defendants Couture and Hennessey.

With regard to defendants Karl, Corr, Abbey North, and Pollicino: at first blush their direct involvement is certainly less egregious than the other individual defendants; however, it is the failure to act in the face of knowledge of the constitutional violations that leads to a finding of personal liability as each individual is in a position of power and in a supervisory role requiring them to act to stop the civil rights abuses. *See* Spencer v. Doe, 139 F.3d 107, 112 (2d Cir. 1998) ("[S]upervisors may be `personally involved' in the constitutional torts of their supervisees if: (1) the supervisory official, after learning of the violation, failed to remedy the wrong; (2) the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) the supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event."); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) ("Personal involvement" of a supervisory

official may be established by evidence of: (1) direct participation in the alleged constitutional violation; (2) failure to remedy a wrong after learning of it; (3) creation or maintenance of a policy under which unconstitutional violations occurred; (4) gross negligence in managing subordinates who committed the unconstitutional acts; or (5) deliberate indifference by failing to act on information indicating that constitutional violations were occurring.).

These legal bases for liability were not even discussed or briefed by defendants in their Motion to Dismiss.

## Point II

### THE COMPLAINT WITH ATTACHED CHRONOLOGY OF EVENTS GIVES DEFENDANT FAIR NOTICE OF THE FACTUAL ALLEGATIONS AND CLAIMS FOR RELIEF ALLEGED BY PLAINTIFFS

Counsel for the School District correctly cites FRCP Rule 8(a)(2) as the appropriate rule governing a pleading such as the Complaint, which should be "a short and plaint statement of the claim showing that the pleader is entitled to relief. Respectfully, this is precisely what the Complaint does here: provides a broad roadmap of the factual assertions with a link to how it is alleged to violate each relevant statute/common law right. Nonetheless, counsel for the School District raises two principal problems he has with the Complaint: a) ¶ 20 is too long, and, the Exhibit: a detailed chronology broken down by date and providing considerable factual detail, is an attachment (as opposed, for example in numbered paragraphs in the Complaint).

With regard to paragraph 20, certainly it is admitted that it is a lengthy paragraph; however, the entirety of paragraph 20, with the exception of the introductory sentence, is a direct quote from the DASA Complaint filed by plaintiffs on December 20, 2021, and as such, is properly plead as one paragraph in the Complaint. In other words, defendant is not forced to

engage in a lengthy response to the paragraph: it can either admit or deny that the blocked language was included in a DASA Complaint sent on or about December 20, 2021.

With regard to the "unnumbered timeline" attached to the Complaint: yes it is true that the attachment is a 23 page single spaced document; however, the information is organized by specific date, and, it is clear from the exhibit and allegations precisely what plaintiff is alleging. Certainly, it is expected that defendant will deny some if not all of the factual assertions in the Exhibit, but, this type of pleading certainly gives defendant "fair notice" of the claims being made against them. *See* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Wharton v. Duke Realty, Llp, 467 F.Supp.2d 381 (S.D. N.Y. 2006) (" the Rules do not require the claimant to set out in detail the facts upon which he or she bases a claim, but only that he or she gives a statement of his or her claim that will give defendant 'fair notice' of what [his or her] claim is and the grounds upon which it rests.")

Here, moving defendants claim that they cannot "decipher" the organized and detailed chronology of events broken down by date. However, "In deciding a motion to dismiss, this court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit. Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir.2000). Respectfully, both paragraph 20 of the Complaint and Exhibit A are consistent with the Notice pleading rules and do not run afoul of the rules since the allegations are organized and give defendants "fair notice" of the claims against them.

However, to the extent this Court disagrees and determines that the pleading should be reorganized and/or simplified, it is respectfully submitted that the Court should allow plaintiffs an opportunity to amend the Complaint in order to cure any pleading deficiency. *See* Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002)

("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable").

**Point III**

**PLAINTIFFS HAVE ASSERTED A COGNIZABLE §1983 FIRST AMENDMENT CLAIM**

In order to properly evaluate the First Amendment issues in this case, we must identify the First Amendment Protections at issue, and, then explain how defendants are responsible for the Constitutional Violations.

1) In the weeks and months before DAD's arrest, DAD raised numerous objections and issues that he had with defendant Shawn Hennessey diverting opportunities to himself by using his position as Varsity Coach. These complaints explain the reason why defendant Hennessey targets DAD.

2) On October 20, 2021 defendant Corr wrote a letter to DAD, attached as Finn Declaration Exhibit 1, in which he bars DAD from attending any school function. This letter threatens police enforcement and is copied to all Principals in the School District.

    - As outlined in Exhibit A to the Complaint, School District employee defendant Hennessey was the one that reported the arrest to the School District's Athletic Director, during school hours, while defendant Hennessey was working at the School District.
    - As outlined in Exhibit A to the Complaint, defendant Hennessey was telling everyone he could that DAD was going to jail for life as a major drug trafficker and did so to silence his biggest critic, and, to preserve his "cash cow" where Hennessey siphons off funds from the Shaker Capitals to his own

benefit, doing so by using his position as Varsity Lacrosse Coach to foster those economic opportunities.

- DAD was not given a hearing prior to having his First Amendment rights taken away.
- The ban was complete and all encompassing: DAD could not pick up his son from School, was not allowed on School grounds for parent teacher conferences or other typical situations, and, DAD was banned from attending any sports if "on campus."

As set forth in Johnson v. Perry:

> The First Amendment prohibits the government from "abridging the freedom of speech, or of the press," and guarantees "the right of the people peaceably to assemble." U.S. Const. amend. I. "The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental." De Jonge v. Oregon , 299 U.S. 353, 364, 57 S.Ct. 255, 81 L.Ed. 278 (1937). "...

Johnson v. Perry, 859 F.3d 156 (2nd Cir. 2017)

Thus, the Government may not "make criminal the exercise of the right of assembly simply because its exercise may be annoying to some people.' )..." Johnson v. Perry, 859 F.3d 156 (2nd Cir. 2017) *quoting* Coates v. City of Cincinnati, 402 U.S. 611, 615 (1971).

As the Court held in Johnson v. Perry, the reach of the first amendment protections, and the extent to which the government may curtail such rights, depends upon whether the area is a "traditional public forum" "a designated public forum" or a "limited public forum." Johnson, 859 F.3d at 171. In this case defendant Corr banned DAD from assembly without any regard to the type of forum involved. To the extent that "traditional public forums" were the subject of the ban, defendants certainly have not articulated any "compelling state interest" it had for example to ban DAD from coming on School grounds to vote, attend School Board meetings, or to pick his son up/drop him off at school.

With regard to attendance at games played on School property, such fields are generally deemed "limited public forums" which require the School District establish that DAD "materially and substantially disrupt the work and discipline of the school." Johnson, 959 F.3d 173. "Thus, a school principal has "the authority ... and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property" and that they do not engage in disruptive or "threatening conduct that disturbs the tranquility of schools."" Id. *quoting* Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999)

As the Courts have repeatedly held, the School District cannot prevent a parent from coming onto campus unless the parent presents a clear and present danger of disruption:

> unless there is a clear and present danger of disruptions such as disorder, riot, obstruction of the event, or immediate threat to public safety, the school may regulate access to its gymnasium when it is being used as a limited public forum only if its restrictions are reasonable and viewpoint-neutral. The version of the events proffered by Johnson, with the record taken in the light most favorable to him, would permit a rational juror to find that Perry's ban of Johnson from Capital Prep basketball games was neither viewpoint-neutral nor reasonable. The jury could permissibly find that Perry had repeatedly bullied JD, that Perry had falsely denied bullying her and maligned her, and that Johnson had vehemently complained of the bullying and the falsehoods. The jury could further infer that Johnson presented no threat of disruption or of harm to anyone—nor even any specter of intimidation, his daughter having already withdrawn from the varsity...

Johnson v. Perry, 859 F.3d 156 (2nd Cir. 2017)

The facts in this Case closely track the factual Record in Johnson v. Perry: a rational juror certainly could determine that DAD presented no threat of disruption and that he was targeted and banned because defendant Hennessey did not like the content of his message: i.e., DAD was pointing out that defendant Hennessey was usurping opportunities for himself and doing so by using his position of power and trust as the School District's Varsity Coach.

As the District Court held in Johnson v. Perry:

> Here, defendant argues that the ban was reasonable and viewpoint neutral because it was justified by defendant's concern that plaintiff posed a danger to the staff and children at

> the school. However, whether plaintiff posed a danger to staff and children at the school is a disputed fact. Equally disputed is whether defendant banned plaintiff from school property based on a disagreement with the message plaintiff was conveying. That plaintiff's comments may have caused discomfort on the part of school staff, or may have been the subject of disagreement cannot justify governmental restriction or suppression based on those comments. See Tinker v. Des Moines Independent Community School Dist. , 393 U.S. 503, 509, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) ("In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint.").

Johnson v. Perry, 140 F.Supp.3d 222 (D. Conn. 2015)

Similarly, here, the motivation as to why defendants put their respective bans in place is a disputed issue of fact for a jury to determine.

## Point IV

## PLAINTIFFS HAVE PROPERLY ALLEGED FIRST AMENDMENT RETALIATION

As outlined in the Complaint, DAD uncovered serious misconduct by defendant Hennessey which he believed, in good faith, violated State and Federal Tax Laws and the Not for Profit Law related to defendant Hennessey usurping opportunities and funds from the Shaker Capitals to himself personally, and, that he did so by using his position of trust and confidence as the Boys' Varsity Coach to wield his power. Complaint, ¶¶72-78.

As outlined in the Complaint, prior to DAD's arrest, defendant Hennessey exhibited frustration and anger due to DAD's calling for a special meeting to investigate self-dealing and misconduct by defendant Hennessey. Complaint ¶¶77-79. Approximately one week after DAD requested a special meeting to discuss Hennessey, news of his arrest got around and defendant Hennessey used the opportunity to go after his accuser, rather than face any punishment or questioning about his own unlawful conduct. Accordingly, it is alleged that the Notice to defendant Corr, and, the subsequent banning of plaintiff from the School and ultimately Shaker

Capitals events, is all related to this illicit motive of defendant Hennessey and his desire to punish DAD for speaking up.

However, as outlined in the Complaint and the attached Exhibit, this was just the start: Plaintiffs complained about the mistreatment of SON on several occasions and after each such complaint and demand for justice, more retaliation followed. Moving defendants do not address any of these complaints or the retaliation inflicted in response to the complaints

The elements of a retaliation claim include: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse [acton]." Hicks v. Baines, 593 F.3d 159, 164 (2d Cir.2010). With regard to the claim of retaliatory intent, it is sufficient to allege facts based upon circumstantial evidence and temporal proximity to make out the claim. As the Second Circuit has held:

> The ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint. It is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[m]alice, intent, knowledge and other conditions of mind ... may be averred generally.

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002).

With regard to defendants Corr and Abbey North, the December 20, 2021 DASA complaint certainly qualifies as a written complaint made as of right by parents to a child that was bullied both in School as well as outside School. Defendants Corr and Abbey North took no action to stop the harassment and bullying and it is alleged that this refusal to act is part of the overall retaliatory motive that defendants shared in an effort to punish plaintiffs for repeated complaints that there son was being bullied and that the School District was doing nothing to stop such bullying.

In addition to traditional retaliation principles, in the First Amendment context, Courts also recognize a form of retaliation related to “Associational” claims of discrimination/harassment,. For example, the Second Circuit case of Adler v. Pataki, 185 F.3d 35 (2nd Cir. 1999) concerned a familial association claim brought pursuant to the First Amendment, alleging that a husband was retaliated against because his wife filed an employment discrimination lawsuit against the State of New York. In that context, the Second Circuit held that "simple vindictiveness against the plaintiff on account of his wife’s lawsuit" was sufficient motive to sustain a familial association claim under the First Amendment. Id. at 45; *see also* Gorman v. Rensselaer Cnty., 910 F.3d 40 (2nd Cir. 2018)("Adler thus establishes that First Amendment associational rights protect against state intrusion into a family relationship intended to retaliate for a family member’s exercise of his or her First Amendment rights."). In so holding the Second Circuit recognized that a state actor may not intentionally interfere with a family relationship in order to punish the speaker, directly or indirectly, for exercising a First Amendment Right.

In this case DAD was banned from School grounds and Shaker Capitals events after voicing issues related to Federal and State Law violations engaged in by defendant Hennessey. Then, after he was banned, DAD and MOM complained to the Shaker Capitals and the School District stating that it was unfair for DAD to be singled out. It is only after repeated complaints and more inaction, that the Shaker Defendants finally ban MOM and SON from events, games and practices. The intent of defendants was clear: they were intentionally interfering with the familial relationship: preventing plaintiffs from going to games together as a family, both on and off School property. This violates the First Amendment.

**Point V**

**PLANITIFFS HAVE PROPERLY PLED A VIOLATION OF DAD'S DUE PROCESS RIGHTS**

As set forth, above, defendant Corr banned DAD from attending any School functions or being on School Property for any reason. As further set forth in the Complaint, defendant Corr took away this substantial First Amendment Right without affording DAD any hearing. This violates the due process clause of the 14th Amendment. As the District Court held in Johnson v. Perry:

> plaintiff's complaint, which alleges that defendant banned plaintiff from all school events, except commencement, implicated the fundamental right of a parent to make decisions concerning the care, custody, and control of his child. See Troxel v. Granville , 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The Court was mistaken to dismiss plaintiff's due process claim, as defendant's actions deprived plaintiff of a recognized liberty interest.
>
> The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in Meyer v. Nebraska , (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in Pierce v. Society of Sisters , (1925), we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." We explained in Pierce that "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." We returned to the subject in Prince v. Massachusetts , (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."

140 F.Supp.3d 222, 229 (D. Conn. 2015)

Accordingly, the District Court held "Banning a parent from his child's public school infringes upon the parent's constitutional liberty interest in directing the education of his child." Johnson v. Perry, 140 F.Supp.3d 222, 229 (D. Conn. 2015). In order to pass constitutional

muster, any such deprivation of this established liberty right required that DAD "be given an opportunity for a hearing before he is deprived of any significant liberty or property interest." Id.

Since plaintiff was not given a hearing prior to having his liberty interest taken from him, plaintiffs have properly asserted a due process claim.

## Point VI

### PLAINTIFF HAS PROPERLY PLED AN INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

A claim alleging intentional infliction of emotional distress "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress" Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993). Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303 (1983)

Admittedly Courts have held plaintiff's to a high burden on IIED claims but certainly there have been many cases with seemingly less serious conduct that have met the standard: *See* Flatley v. Hartmann, 138 A.D.2d 345, 346, 525 N.Y.S.2d 637, 638 (2d Dep't 1988) ("hang-up" telephone calls); Halio v. Lurie, 15 A.D.2d 62, 67, 222 N.Y.S.2d 759, 764 (2d Dep't 1961) (taunting letter from former boyfriend, boasting of marriage); Flamm v. Van Nierop, 56 Misc.2d 1059, 1061, 291 N.Y.S.2d 189, 191 (Westchester Cty.Sup.Ct.1968) (harassing plaintiff by driving too closely and making threatening looks); Blair v. Union Free Sch. Dist. No. 6, 67 Misc.2d 248, 324 N.Y.S.2d 222 (Dist.Ct. Suffolk Cty.1971) (confidential information leaked by police and school officials).

Most directly on point is the District Court decision in Johnson v. Perry. In Johnson, plaintiff alleged an IIED claim based upon facts in which a father was banned from his daughter's school. In deciding an issue of fact was presented, the Court noted that "reasonable minds could disagree" as to whether the activity by the School District was sufficiently outrageous (noting that the parent was banned from even picking up his daughter from school, allegedly because the content of his speech offended defendant). 140 F.Supp.3d 222, 227-228.

By the acts and omissions outlined above, and in the accompanying declaration, defendants knew, or should have known, that their harassment, bullying and intentional conduct would cause foreseeable harm to the health, well-being, and development of the innocent child, as well as his parents. Defendants behaved in a manner plaintiff that was so outrageous as to exceed all reasonable bounds of decency.

WHEREFORE, based upon the foregoing, together with the accompanying Declaration in Support, plaintiffs seek a ruling denying defendants Motions to Dismiss, with the exception of the various claims no longer being prosecuted by plaintiffs, as outlined in more detail in the Finn Declaration.

DATED: November 21, 2022

FINN LAW OFFICES
By:______________________
Ryan M. Finn, Esq.
P.O. Box 966
Albany, NY 12201
Ph: 518.928.1152
Fax: 518.677.1155
Ryan@LawFinn.com
www.LawFinn.com

* Physical location: 12 Sheridan Avenue
Albany, NY 12207