UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
JANE DOE and JOHN DOE SR.,
individually and as parents and natural
guardians of John Doe, an infant,

     *Plaintiffs*,

v.             No. 1:22-cv-700

BOARD OF EDUCATION OF NORTH
COLONIE CENTRAL SCHOOL DISTRICT,
NORTH COLONIE CENTRAL SCHOOL
DISTRICT, SHAKER CAPITALS LACROSSE
CLUB, INC., SUPERINTENDENT D. JOSEPH
CORR, in his individual and official capacity,
GARRETT COUTURE, in his individual and
official capacity, SHAWN HENNESSEY, in his
individual and official capacity, JOSEPH
POLLICINO, in his individual and official capacity,
CLAYTON HOWELL, in his individual and
official capacity, ABBEY NORTH, in her
individual and official capacity, and THOMAS
JOHN KARL, in his individual and official capacity,

     *Defendants*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:        OF COUNSEL:

FINN LAW OFFICES       RYAN M. FINN, ESQ.
*Attorneys for Plaintiffs*
P.O. Box 966
Albany, NY 12201

GIRVIN & FERLAZZO, P.C.     PATRICK J. FITZGERALD, ESQ.
*Attorneys for School District Defendants*   SCOTT P. QUESNEL, ESQ.
20 Corporate Woods Boulevard
Albany, NY 12211-2350

| | |
|---|---|
| THE REHFUSS LAW FIRM, P.C. | STEPHEN J. REHFUSS, ESQ. |
| *Attorneys for Shaker Capitals Defendants* | ABIGAIL W. REHFUSS, ESQ. |
| 40 British American Blvd. | |
| Latham, NY 12110 | |
| | |
| HON. LETITIA JAMES | GREGORY J. RODRIGUEZ, ESQ. |
| Attorney General for the State of New York | Ass't Attorney General |
| *Attorneys for Defendant Howell* | |
| The Capitol | |
| Albany, New York 12224 | |

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

### I.     INTRODUCTION

Plaintiffs brought this action against the above-captioned defendants asserting claims under 42 U.S.C. § 1983 and various state law theories. In short, the case involves plaintiffs' alleged ban from participating in certain lacrosse-related activities in the North Colonie, New York community.[1]

In mid-October 2022, each defendant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). On April 6, 2023, the Court dismissed the complaint without prejudice to enable plaintiffs to cure certain pleading deficiencies. *See* Dkt. 38 at 3 ("April 6

---

[1] Although plaintiffs caption their pleading, which they filed in response to defendants' demands (Dkt. Nos. 4, 5, 6), as the "complaint," it differs substantially from the initial state court complaint they filed in this action. Among other changes, the complaint (Dkt. No. 14) adds approximately 200 additional paragraphs of allegations. Thus, the Court considers Dkt. No. 14 plaintiffs' first amendment of its pleading.

2

Order"). Specifically, the April 6 Order noted that the complaint failed to comply with Rule 8(a)(2) and Rule 10(b) because it incorporated a 23-page, single-spaced, unsigned, unnumbered timeline as an exhibit to the pleading, which the Court noted was "confusing, disorganized, and unacceptable." *Id.* at 4. The April 6 Order gave plaintiffs leave to amend the pleading a second time, though it was clear that plaintiffs' failure to file a second amended complaint on or before April 27, 2023 would result in dismissal with prejudice. *Id.*

April 27, 2023 came and went, and plaintiffs failed to file a second amended complaint. So, on May 2, 2023—several days after the deadline— the Court entered an order dismissing the complaint with prejudice and directing the Clerk of Court to enter judgment accordingly. *See* Dkt. 39 ("May 2 Order").

About an hour later, plaintiffs' counsel filed a letter claiming that he had received an ECF notification that day dismissing the case, and in reviewing his emails "realized that the ECF entries from April 6, 2023 went to [his] spam folder and unfortunately [he] did not see them." Dkt. No. 41 ("May 2 Letter"). Counsel then requested that the Court provide him a "very brief" extension to file a second amended complaint. *Id.*

On May 15, 2023, plaintiffs filed a motion to vacate dismissal under Rule 60(b)(1) (the "Motion"). Dkt. No. 42. The Motion largely rehashed the same

3

story from the May 2 Letter, albeit with a few more details. Each defendant has opposed the Motion, and it has been fully briefed. The Court will now consider it on the basis of the parties' submissions without oral argument.

## II. DISCUSSION

Plaintiffs seek to vacate the May 2 Order pursuant to Rule 60(b)(1), arguing that their counsel's conduct constitutes excusable neglect. For numerous reasons, the Court disagrees.

Rule 60(b) permits courts to relieve a party from an order for various reasons. It is "a mechanism for extraordinary judicial relief that is generally not favored and is properly granted only upon a showing of exceptional circumstances." *Marshall v. City of New York*, 2015 U.S. Dist. LEXIS 66048, at \*2 (S.D.N.Y. 2015) (citing *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008)). Relevant here, Rule 60(b)(1) provides that courts may grant relief for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). For a Rule 60(b) motion, the burden of proof is on the party seeking relief from judgment. *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) (citation omitted).

Courts consider the following factors when evaluating Rule 60(b)(1) motions premised on excusable neglect: (i) the danger of prejudice to the nonmovant; (ii) the length of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the

reasonable control of the movant; and (iv) whether the movant acted in good faith. *Pioneer Investment Servs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395 (1993). "While three of the *Pioneer* factors—the length of the delay, the danger of prejudice, and the movant's good faith—usually weigh in favor of the party seeking the [relief], the Second Circuit has focused on the third factor: the reason for the delay, including whether it was within the reasonable control of the movant." *In re 199 E. 7th St. LL*, 2017 WL 2226592, at *2 (S.D.N.Y. May 19, 2017) (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 255, 366 (2d Cir. 2003)).

"A]n attorney's negligence does not provide ground for relief under Rule 60(b)(1)." *Daane v. Ryder Truck Rental, Inc.*, 2023 U.S. Dist. LEXIS 35326, at *6 (S.D.N.Y. 2023); *see also Carcello v. TJX Cos.*, 192 F.R.D. 61, 63 (D. Conn. Jan. 10, 2000) (noting that "gross negligence on the part of counsel does not fall within the scope of excusable neglect as defined by Rule 60(b)(1)"). Indeed, "[t]he attorney of record bears **_sole responsibility_** to prosecute his client's claim, **_keep track of deadlines_** and respond to motions filed on the docket." *Id.* (citing *Snyman v. W.A. Baum Co.*, 2009 U.S. Dist. LEXIS 9353, at *1 (S.D.N.Y. Feb. 6, 2009), *aff'd*, 360 F. App'x 251 (2d Cir. 2010) (emphasis added).

Moreover, clients are "not generally excused from the consequences of [their] attorney's negligence absent extraordinary circumstances." *Carcello*,

5

192 F.R.D. at 63 (citing *Cobos v. Adelphi Univ.*, 179 F.R.D. 381, 386 (E.D.N.Y. 1998)).  To this end, the Second Circuit has "consistently refused to relieve a client of … a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or of the rules of the court, or his inability to efficiently manage his caseload." *Id.* (citing *Cobos*, 179 F.R.D. at 386); *see also Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986).

Upon review, the *Pioneer* factors largely cut against a finding of excusable neglect.  Most notably, the third (and principal) factor—plaintiffs' reason for the delay—is highly questionable.  For their part, plaintiffs assert that counsel blew the deadline in this action because he was unaware of the April 6 Order.  Why was he unaware?  Counsel claims the ECF notification concerning the April 6 Order simply landed in the spam folder of his email.

There are numerous holes in this excuse.  First, the ECF email notification associated with the April 6 Order was addressed to a total of *seventeen* separate email addresses and individuals and not a single other recipient has complained that it went to their spam folder.  Second, there were actually *two* ECF email notifications sent out on April 6, 2023: the first which advised the parties of the April 6 Order, and a second sent two minutes later stating: "Set Notice of Compliance Deadline to 4/27/2023."  Plaintiffs'

6

counsel does not even suggest that he failed to receive the second notification, which would have alerted him to the April 27, 2023 deadline.

Third, beyond a self-serving declaration from counsel, plaintiffs have provided no documentation (be it a screenshot of the email in counsel's spam folder, an affidavit from an IT professional, or something else) explaining why this ECF email—but apparently none of the other 40 ECF email notifications in this case, including the one concerning the May 2 Order—landed in counsel's spam folder.

Fourth, notwithstanding the above three issues, plaintiff's counsel *admits* that: (i) he was not the only one from his law firm who received the ECF email (his wife who works as his part-time employee also received it); and (ii) the email *did not* end up in his wife's spam folder. *See* Dkt. No. 47 at ¶ 12. It strains credulity that identical emails to two addresses on the same law firm server would be filtered differently. But even if they were, it would not matter—the fact remains that counsel's legal assistant received the email in her inbox, and a legal assistant's ignorance does not constitute excusable neglect. *United States v. Hooper*, 43 F.3d 26, 28 (2d Cir. 1994) (affirming denial of extension where delay resulted from legal assistant's ignorance of the rules).

Finally, even taking as true counsel's unsupported assertion that his legal assistant had no obligation to read and calendar his deadline despite

7

receiving the ECF email notification, Dkt. No. 47 at ¶ 12, he, as the attorney on the matter, was still required to diligently monitor the docket himself, *see, e.g.*, *Kaufmann v. United States*, 2014 WL 3845074, at *3 (N.D.N.Y. Aug. 5, 2014); *Doroz v. TECT Utica Corp.*, 2013 WL 5786641, at *4 (N.D.N.Y. Oct. 28, 2013). If counsel had done so even a single time in the three weeks preceding April 27, 2023, he would have learned about the April 6 Order and the deadline to file a second amended complaint. As courts in this circuit have noted in the face of nearly identical "spam folder" excuses, counsel's "garden-variety" inattention to the docket does not constitute excusable neglect. *See William v. City of New York*, 2018 WL 11219952, at *3 (S.D.N.Y. July 23, 2018); *Kaufmann*, 2014 WL 3845074, at *3-4.[2]

And although the other three *Pioneer* factors are less damaging, they are hardly positives for plaintiffs and are far from sufficient to outweigh the third factor. First, in contending that their failure to file a second amended complaint did not prejudice defendants, plaintiffs ignore that, due to their counsel's inattention, defense counsel was required to research and respond to a motion to vacate dismissal after the case had already been dismissed

---

[2] Notably, this is not the first time plaintiffs' counsel's inattention has impacted this case. Last summer, counsel filed a letter motion, Dkt. No. 12, seeking additional time to file the complaint in response to defendants' July 6, 2022 demands, Dkt. Nos. 4, 5, 6. In his letter, counsel stated "[u]nfortunately, I did not see the Court's directive to file a Complaint by July 21, 2022 until earlier today as I sat down to start the process of drafting the pleading. This was an oversight on my part." Dkt. No. 12. The Court granted plaintiffs' letter motion and allowed for a several-day extension. Dkt. 13.

with prejudice. Second, while the delay is this case is shorter than in other cases where courts have denied motions to vacate, it is notable that this case is already over a year old, and discovery has largely not yet commenced. Thus, were the Court to permit plaintiffs to file a second amended complaint, this case would almost certainly be several years old before it was trial ready. For a case that has already been dismissed with prejudice, this represents a substantial impact on the proceedings and certainly does not promote judicial economy. Third, though defendants do not call counsel's good faith into question, the excuses he advances throughout this weak attempt to resuscitate the case hardly tilt the final *Pioneer* factor in plaintiffs' favor.

Accordingly, plaintiffs have failed to meet their steep burden of showing that extraordinary judicial relief is warranted. The *Pioneer* factors do not support a finding of excusable neglect, there are no exceptional circumstances favoring plaintiffs, and their Rule 60(b)(1) motion to vacate dismissal must be denied.

### III.  CONCLUSION

In its April 6 Order, the Court characterized plaintiffs' complaint as confusing, disorganized, and ultimately unacceptable. Those same words ring true now. It is confusing how plaintiffs' counsel—who has already once admitted to missing a filing directive and delaying the case due to an oversight (and whose poor pleading practices compelled this outcome in the

9

first place)—could again ignore the docket and fail to calendar appropriate deadlines in an action he filed on behalf of a client. The apparent state of affairs at counsel's law practice—described in detail in his own moving papers—can only be described as disorganized. Taken together, this conduct is unacceptable. It wastes judicial resources. It also wastes the resources of opposing counsel, who have consistently and diligently advanced their own clients' interests in this litigation. Thankfully, this kind of practice is not common in this District. Nor will it become so.

Therefore, it is

ORDERED that

1. Plaintiffs' letter motion requesting extension and motion to vacate dismissal are DENIED.

IT IS SO ORDERED.

_____
David N. Hurd
U.S. District Judge

Dated: June 27, 2023
Utica, New York